Justice Breyer
delivered the opinion of the Court.
The Speedy Trial Act of 1974, 18 U. S.C. §3161 et seq;> provides that in “any case in which a plea of not guilty is entered, the trial.. . shall commence within seventy days” from the later of (1) the “filing date” of the information or indictment or (2) the defendant’s initial appearance before a judicial officer (i <?., the arraignment). § 3161(c)(1). The Act goes on to list a set of exclusions from the 70-day period, including “delay resulting from, any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.” § 3161(h)(1)(D) (2006 ed., Supp. Ill) (emphasis added).
The United States Court of Appeals for the Sixth Circuit held in this case that a pretrial motion falls within this exclusion only if it “actually causefs] a delay, or the expectation of a delay, of trial.” 579 F. 3d 589, 598 (2009). In our view, however, the statutory exclusion does not contain this kind of causation requirement. Rather, the filing of a pretrial motion falls within this provision irrespective of whether it actually causes, or is expected to cause, delay in starting a trial.
I
Jason Louis Tinklenberg, the respondent, was convicted of violating federal drug and gun laws. 18 U. S. C. § 922(g)(1) (felon in possession of a firearm); 21 U. S. C. § 843(a)(6) (possession of items used to manufacture a controlled substance). He made his initial appearance before a judicial officer on October 31, 2005, and the speedy trial clock then began to *651 run. His trial began on August 14, 2006, 287 days later. Just before trial, TinHenberg asked the District Court to dismiss the indictment on the ground that the trial came too late, violating the Speedy Trial Act’s 70-day requirement. The District Court denied the motion after finding that 218 of the 287 days fell within various Speedy Trial Act exclusions, leaving 69 nonexcludable days, thereby making the trial timely.
On appeal the Sixth Circuit agreed with the District Court that many of the 287 days were excludable. But it disagreed with the District Court about the excludability of time related to three pretrial motions. The Government filed the first motion, an unopposed motion to conduct a video deposition of a witness, on August 1, 2006; the District Court disposed of the motion on August 3, 2006. The Government filed the second motion, an unopposed motion to bring seized firearms into the courtroom as evidence at trial, on August 8, 2006; the District Court disposed of the motion on August 10, 2006. TinHenberg filed the third motion, a motion to dismiss the indictment under the Speedy Trial Act, on Am gust 11, 2006; the District Court denied that motion on August 14, 2006. In the Sixth Circuit’s view, the nine days during which the three motions were pending were not excludable because the motions did not “actually cause a delay, or the expectation of delay, of trial.” 579 F. 3d, at 598. Because these 9 days were sufficient to bring the number of nonexcludable days above 70, the Court of Appeals found a violation of the Act. And given the fact that TinHenberg had already served his prison sentence, it ordered the District Court to dismiss the indictment with prejudice.
We granted certiorari at the Government’s request in order to review the Sixth Circuit’s motion-by-motion causation test. We now reverse its determination. But because we agree with the defendant about a subsidiary matter, namely, the exclusion of certain holidays and weekend days during the period in which he was transported for a compe *652 tency examination, id., at 597, we affirm the Court of Appeals’ ultimate conclusion.
II
A
In relevant part the Speedy Trial Act sets forth a basic rule:
“In any case in which a plea of not guilty is entered, the trial of a defendant.. . shall commence within seventy days from [the later of (1)] the filing date ... of the information or indictment, or . . . [(2)'] the date the defendant has appeared before a judicial officer of the court in which such charge is pending ....” §-3161(c)(l) (2006 ed.).
The Act then says that the “following periods of delay shall be excluded in computing.. . the time within which the trial . . . must commence.” § 3161(h) (2006 ed., Supp. III). It lists seven such “periods of delay.”
It describes the first of these seven excludable periods as
“(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
“(A) delay resulting from any proceeding ... to determine the mental competency or physical capacity of the defendant;
“(B) delay resulting from trial with respect to other charges . . .;
“(C) delay resulting from any interlocutory appeal;
“(D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
“(E) delay resulting from any proceeding relating to the transfer of a case [or defendant] . . . from another district.. . ;
“(F) delay resulting from transportation of any defendant from another district, or to and from places of *653 examination or hospitalization, except that any time consumed in excess of ten days . . . shall be presumed to be unreasonable;
“(G) delay resulting from consideration by the court of a proposed plea agreement.. .;
“(H) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.” Ibid. (2006 ed. and Supp. Ill) (emphasis added).
B
The particular provision before us, subparagraph (D), excludes from the speedy trial period “delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.” § 3161(h)(1)(D). The question is whether this provision stops the speedy trial clock from running automatically upon the filing of a pretrial motion irrespective of whether the motion has any impact on when the trial begins. Unlike the Sixth Circuit, we believe the answer to this question is yes.
We begin with the Act’s language. The Sixth Circuit based its answer primarily upon that language. It argued that the phrase “delay resulting from,” read most naturally, requires a court to apply the exclusion provision only to those “motion[s]” that “actually cause a delay, or the expectation of a delay, of trial.” 579 F. 3d, at 598. We agree that such a reading is linguistically reasonable, but the Court of Appeals wrote that there “is no conceivable way to read this language other than to require a delay to result from any pretrial motion before excludable time occurs.” Ibid. See also ibid. (“[T]he statute is clear”). And here we disagree.
When the Court of Appeals says that its reading is the only way any reasonable person could read this language, it overstates its claim. For one thing, even though the word “delay” ordinarily indicates a postponement, it need not inev *654 itably do so. Compare American Heritage Dictionary 480 (4th ed. 2000) (“[t]o postpone until a later time” or “[t]o cause to be later or slower than expected or desired”) with ibid. (“[t]he interval of time between two events”). In any event, terms must be read in their statutory context in order to determine how the provision in question should be applied in an individual case.
Statutory language that describes a particular circumstance, for example, might require a judge to examine each individual case to see if that circumstance is present. But, alternatively, it might ask a judge instead to look at more general matters, such as when a statute requires a judge to increase the sentence of one convicted of a “crime of violence” without requiring the judge to determine whether the particular crime at issue in a particular case was committed in a violent manner. See Taylor v. United States, 495 U. S. 575, 602 (1990) (“crime of violence” characterizes the generic crime, not the particular act committed). Similarly a statute that forbids the importation of “wild birds” need not require a court to decide whether a particular parrot is, in fact, wild or domesticated. It may intend to place the entire species within that definition without investigation of the characteristics of an individual specimen. See United States v. Fifty-Three (53) Eclectus Parrots, 685 F. 2d 1131, 1137 (CA9 1982).
More than that, statutory language can sometimes specify that a set of circumstances exhibits a certain characteristic virtually as a matter of definition and irrespective of how a court may view it in a particular case. A statute that describes “extortion” as a “crime of violence” makes that fact so by definition, without asking a court to second-guess Congress about the matter. 18 U. S. C. § 924(e)(2)(B)(ii) (2006 ed.) (defining “violent felony” to include extortion for purposes of the Armed Career Criminal Act).
The statute before us, though more complex, can be read similarly. The pretrial motion subparagraph falls within a *655 general set of provisions introduced by the phrase: “The following periods of delay shall be excluded.” § 3161(h) (2006 ed., Supp. III). That phrase is then followed by a list that includes “[a]ny period of delay resulting from other proceedings concerning the defendant, including ....” § 3161(h)(1). This latter list is followed by a sublist, each member (but one) of which is introduced by the phrase “delay resulting from . . . ,” ibid. (2006 ed. and Supp. Ill), which words are followed by a more specific description, such as “any pretrial motion” from its “filing” “through the conclusion of the hearing on, or other prompt disposition of, such motion.” § 3161(h)(1)(D) (2006 ed., Supp. III). . The whole paragraph can be read as requiring the automatic exclusion of the members of that specific sublist, while referring to those members in general as “periods of délay” and as causing that delay, not because Congress intended the judge to determine causation, but because, in a close to definitional way, the words embody Congress’ own view of the matter.
It is not farfetched to describe the members of the specific sublist in the statute before us in this definitional sense — as “periods of delay” or as bringing about delay. After all, the exclusion of any of the specific periods described always delays the expiration of the 70-day speedy trial deadline. Or Congress might have described the specific periods listed in paragraph (1) as “periods of delay” and “delay[s] resulting from” simply because periods of the type described often do cause a delay in the start of trial. Both explanations show that, linguistically speaking, one can read the statutory exclusion as automatically applying to the specific periods described without leaving to the district court the task of determining whether the period described would or did actually cause a postponement of the trial in the particular case. Thus, language alone cannot resolve the basic question presented in this case. But when read in context and in light of the statute’s structure and purpose, we think it clear that Congress intended subparagraph (D) to apply automatically.
*656 c
We now turn to several considerations, which, taken together, convince us that the subparagraphs that specifically list common pretrial occurrences apply automatically in the way we have just described. First, subparagraph (D) clarifies that the trial court should measure the period of excludable delay for a pretrial motion “from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion,” but nowhere does it mention the date on which the trial begins or was expected to begin. § 3161(h)(1)(D) (2006 ed., Supp. III). Thus, it is best read to instruct measurement of the time actually consumed by consideration of the pretrial motion. Two other related sub-paragraphs contain clarifying language that contemplates measurement of the time actually consumed by the specified pretrial occurrence without regard to the commencement of the trial. See § 3161(h)(1)(F) (“[A]ny time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant’s arrival at the destination shall be presumed to be unreasonable”); § 3161(h)(1)(H) (“delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court”). If “delay” truly referred to the postponement of trial, then presumably those subparagraphs would instruct that excludable periods should be measured from the date that trial was otherwise scheduled to begin.
Second, we are impressed that during the 37 years since Congress enacted the Speedy Trial Act, every Court of Appeals has considered the question before us now, and every Court of Appeals, implicitly or explicitly, has rejected the interpretation that the Sixth Circuit adopted in this case. See United States v. Wilson, 835 F. 2d 1440, 1443 (CADC 1987) (explicit), abrogated on other grounds by Bloate v. United States, 559 U. S. 196 (2010); United States v. Hood, *657 469 F. 3d 7, 10 (CA1 2006) (explicit); United States v. Cobb, 697 F. 2d 38, 42 (CA2 1982) (explicit), abrogated on other grounds by Henderson v. United States, 476 U. S. 321 (1986); United States v. Novak, 715 F. 2d 810, 813 (CA3 1983) (explicit), abrogated on other grounds by Henderson, supra; United States v. Dorlouis, 107 F. 3d 248, 253-254 (CA4 1997) (explicit); United States v. Green, 508 F. 3d 195, 200 (CA5 2007) (explicit); United States v. Montoya, 827 F. 2d 143,151 (CA7 1987) (explicit); United States v. Titlbach, 339 F. 3d 692, 698 (CA8 2003) (implicit); United States v. Van Brandy, 726 F. 2d 548, 551 (CA9 1984) (explicit); United States v. Vogl, 374 F. 3d 976, 985-986 (CA10 2004) (explicit); United States v. Stafford, 697 F. 2d 1368, 1371-1372 (CA11 1983) (explicit). This unanimity among the lower courts about the meaning of a statute of great practical administrative importance in the daily working lives of busy trial judges is itself entitled to strong consideration, particularly when those courts have maintained that interpretation consistently over a long period of time. See General Dynamics Land Systems, Inc. v. Cline, 540 U. S. 581, 593-594 (2004).
Third, the Sixth Circuit’s interpretation would make the subparagraph (D) exclusion significantly more difficult to administer. And in doing so, it would significantly hinder the Speedy Trial Act’s efforts to secure fair and efficient criminal trial proceedings. See Zedner v. United States, 547 U. S. 489, 497 (2006) (noting that the Act’s exceptions provide “necessary flexibility”); H. R. Rep. No. 93-1508, p. 15 (1974) (the Act seeks to achieve “efficiency in the processing of cases which is commensurate with due process”); S. Rep. No. 93-1021, p. 21 (1974). Trial judges may, for example, set trial dates beyond 70 days in light of other commitments. And in doing so, a trial judge may well be aware, based on his or her experience, that pretrial motions will likely consume the extra time — even though the judge may know little about which specific motions will be filed, when, and how many. How is that judge to apply the Sixth Circuit’s ap *658 proach, particularly when several, including unanticipated, pretrial proceedings did consume the time in question?
Moreover, what is to happen if several excludable and several nonexcludable potential causes of delay (e. g., pretrial motions to take depositions, potential scheduling conflicts, various health examinations, etc.) coincide, particularly in multidefendant cases? Can the judge, motion by motion, decide which motions were responsible and which were not responsible for postponing what otherwise might have been an earlier trial date? And how is a defendant or his attorney to predict whether or when a judge will later find a particular motion to have caused a postponement of trial? And if the matter is difficult to predict, how is the attorney to know when or whether he or she should seek further postponement of the 70-day deadline?
With considerable time and judicial effort, perhaps through the use of various presumptions, courts could find methods for overcoming these and other administrative difficulties. In some instances, the judge may know at the time of filing that a given motion is easily resolved or that its complexity will almost certainly postpone the trial. Judges could note on the record their predictions about whether the motion will postpone trial at the time that the motion is filed. Parties could also stipulate as to whether a given motion would be excluded from the speedy trial clock. But those theoretical strategies would not prevent all or even most mistakes, needless dismissals of indictments, and potential retrials after appeal — all of which exact a toll in terms of the fairness of and confidence in the criminal justice system. And any such future strategies for administering the Sixth Circuit’s rule cannot provide a present justification for turning the federal judicial system away from the far less obstacle-strewn path that the system has long traveled.
Fourth, we are reinforced in our conclusion by the difficulty of squaring the Sixth Circuit’s interpretation with this Court’s precedent. In Henderson v. United States, supra, *659 the Court rejected the contention that the exclusion provision for pretrial motions governs only reasonable delays. The Court there concluded (as the Court of Appeals had held) that the exclusion “was intended to be automatic.” Id., at 327 (quoting United States v. Henderson, 746 F. 2d 619, 622 (CA9 1984); internal quotation marks omitted). See also Bloate, 559 U. S. 196 (holding based in part on the view that the exclusion applies “automatically” to the specified period of delay). Henderson did not consider whether a trial court must determine whether the pretrial motion actually caused postponement of the trial in each individual case. But the Sixth Circuit’s interpretation would nonetheless significantly limit the premise of “automatic application” upon which the case rests.
Fifth, for those who find legislative history useful, it is worthwhile noting (as this Court noted in Henderson) that the Senate Report concerning the reenactment of the provision in 1979 described it, along with the other provisions in § 3161(h)(1), as referring to “specific and recurring periods of time often found in criminal cases,” and characterized them as “automatically excludable delay,” S. Rep. No. 96-212, p. 9 (1979). See H. R. Rep. No. 93-1508, at 21 (“The time limits would be tolled by hearings, proceedings and necessary delay which normally occur prior to the trial of criminal cases” (emphasis added)); S. Rep. No. 93-1021, at 21 (“[The Act] has carefully constructed exclusions and exceptions which permit normal pre-trial preparation in the ordinary noncomplex cases which represent the bulk of business in the Federal courts”). But ef. id., at 35 (paragraph (h)(1) excludes “[d]elays caused by proceedings relating to the defendant” (emphasis added)).
Sixth, because all the subparagraphs but one under paragraph (1) begin with the phrase “delay resulting from,” the Sixth Circuit’s interpretation would potentially extend well beyond pretrial motions and encompass such matters as mental and physical competency examinations, interlocutory *660 appeals, consideration of plea agreements, and the absence of essential witnesses. See § 3161(h)(1) (2006 ed., Supp. III); § 3161(h)(3)(A) (2006 ed.). Given the administrative complexity the causation requirement would .bring about in all these areas, those Circuits that have considered a causation requirement in respect to these other matters have rejected it. See, e. g., United States v. Pete, 525 F. 3d 844, 852 (CA9 2008) (interlocutory appeal); United States v. Miles, 290 F. 3d 1341, 1350 (CA11 2002) (unavailability of essential witnesses); United States v. Robinson, 887 F. 2d 651, 656-657 (CA6 1989) (trial on other charges). That further complexity, along with these lower court holdings, reinforce our conclusion.
We consequently disagree with the Sixth Circuit that the Act’s exclusion requires a court to find that the event the exclusion specifically describes, here the filing of the pretrial motion, actually caused or was expected to cause delay of a trial. We hold that the Act contains no such requirement.
Ill
Tinklenberg also argues that the Sixth Circuit wrongly interpreted a different exclusion provision, this time the provision excluding
“delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant’s arrival at the destination shall be presumed to be unreasonable.” § 3161(h)(1)(F) (2006 ed., Supp. Ill) (emphasis added).
The District Court granted Tinklenberg’s request for a competency evaluation, and he was transported to a medical facility for examination. The lower courts agreed that a total *661 of 20 transportation days elapsed and that since the Government provided no justification, all days in excess of the 10 days specified in the statute were unreasonable. But in counting those excess days, the court exempted weekend days and holidays. Since Veterans Day, Thanksgiving Day, and three weekends all fell within the 20-day period, only 2 days, not 10 days, were considered excessive, during which the 70-day Speedy Trial Act clock continued to tick.
Tinklenberg argues that subparagraph (F) does not exempt weekend days and holidays; hence the court should have considered 10, not 2, days to be excessive. And the parties concede that those eight extra ticking days are enough to make the difference between compliance with, and violation of, the Act.
As the Solicitor General notes, we may consider, or “decline to entertain,” alternative grounds for affirmance. See United States v. Nobles, 422 U. S. 225, 242, n. 16 (1975). In this case, we believe it treats Tinklenberg, who has already served his sentence, more fairly to consider the alternative ground and thereby more fully to dispose of the case.
The Sixth Circuit exempted weekend days and holidays because it believed that subparagraph (F) incorporated Federal Rule of Criminal Procedure 45(a). At the relevant time, that Rule excluded weekend days and holidays when computing any period of time specified in the “rules,” in “any local rule,” or in “any court order” that was less than 11 days. Fed. Rule Crim. Proc. 45(a) (2005). But in our view subparagraph (F) does not incorporate Rule 45. The Act does not say that it incorporates Rule 45. The Government has given us no good reason for reading it as incorporating the Rule. And the Rule itself, as it existed at the relevant time, said that it applied to “rules” and to “orders,” but it said nothing about statutes. Other things being equal, the fact that Rule 45 is revised from time to time also argues against its direct application to subparagraph (F). That is because *662 those changes, likely reflecting considerations other than those related to the Speedy Trial Act, may well leave courts treating similar defendants differently.
Without relying upon a cross-reference to Rule 45, we believe the better reading of subparagraph (F) would include weekend days and holidays in its 10-day time period. Under the common-law rule, weekend days and holidays are included when counting a statutory time period of 10 days unless the statute specifically excludes them. See 74 Am. Jur. 2d, Time §22, p. 589 (2001) (in calculating time periods expressed in statutes, “when the time stipulated must necessarily include one or more Saturdays, Sundays, or holidays, those days will not be excluded, in the absence of an express proviso for their exclusion”). Many courts have treated statutory time periods this way. See, e. g., Howeisen v. Chapman, 195 Ind. 381, 383-884, 145 N. E. 487, 488 (1924); American Tobacco Co. v. Strickling, 88 Md. 500, 508-511, 41 A. 1083, 1086 (1898). And Congress has tended specifically to exclude weekend days and holidays from statutory time periods of 10 days when it intended that result. Compare 18 U. S. C. § 3142(d)(2) (permitting the temporary detention of certain defendants “for a period of not more than ten days, excluding Saturdays, Sundays, and holidays”) and 5 U. S. C. § 552a(d)(2)(A) (requiring an agency to acknowledge receipt of a request to amend agency records within “10 days (excluding Saturdays, Sundays, and legal public holidays)”) with 18 U. S. C. § 2518(9) (establishing a 10-day period for disclosing applications for and court orders authorizing wiretaps without specifically excluding weekends and holidays) and § 4244(a) (providing a 10-day period after conviction for filing a motion to request mental health treatment without specifically excluding weekends and holidays). Indeed, Rule 45 has been recently modified so that now (though not at the time of Tinklenberg’s proceedings) it requires a similar result. Fed. Rule Crim. Proc. 45(a)(1) (2010) (instructing that weekend days and holidays are to be counted when calculat *663 ing all time periods, including statutory time periods for which no alternative method of computing time is specified).
* * ■ *
We disagree with the Sixth Circuit’s interpretation of both subparagraph (D) and subparagraph (F), and now hold that its interpretations of those two provisions are mistaken. Nonetheless the conclusions the court drew from those two interpretations in relevant part cancel each other out such that the court’s ultimate conclusion that Tinklenberg’s trial failed to comply with the Speedy Trial Act’s deadline is correct. Therefore, the Sixth Circuit’s judgment ordering dismissal of the indictment on remand is

Affirmed.

Justice Kagan took no part in the consideration or decision of this case.